933 F.2d 1002
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Earl SWEENEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory Rudolph DAVIS, a/k/a Rudy Davis, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick Allan FLEMING, a/k/a Freddy Fleming, Defendant-Appellant.
 Nos. 90-5358, 90-5359 and 90-5365.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1991.
Decided May 22, 1991.
 
 1
 Appeals from the United States District Court for the District of South Carolina, at Greenville. Joe F. Anderson, Jr., District Judge. (CR-89-285)
 
 
 2
 William Thomas Toal, Johnson, Toal & Battiste, P.A., Columbia, S.C., (Argued), for appellant Sweeney; I.S. Leevy Johnson, Johnson, Toal & Battiste, P.A., Columbia, S.C., on brief.
 
 
 3
 Charles Benjamin Patterson, Greenville, S.C., for appellant Fleming.
 
 
 4
 William Corley Lucius, Assistant United States Attorney, Greenville, S.C., (Argued), for appellee; E. Bart Daniel, United States Attorney, Greenville, S.C., on brief. Weyman Harrison Dodson, Jr., Greenville, S.C., for appellant Davis.
 
 
 5
 D.S.C.
 
 
 6
 AFFIRMED.
 
 
 7
 Before WIDENER and PHILLIPS, Circuit Judges, and REBECCA BEACH SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 REBECCA BEACH SMITH, District Judge:
 
 8
 On September 21, 1989, Robert Earl Sweeney, Gregory Rudolph Davis, and Frederick Allan Fleming were jointly indicted for conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. Sec. 846. Sweeney was also indicted on five additional counts of distribution of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). The trial commenced January 10, 1990, and lasted until January 26, 1990, when the jury returned verdicts of guilty on all counts. All substantive post-trial motions were heard and denied on February 13, 1990. On appeal, Sweeney alleges several errors in evidentiary rulings during the trial and at sentencing. Davis and Fleming appeal their convictions on the ground that the trial court abused its discretion in denying their motions for severance. We consider each defendant's allegations in turn and affirm the district court.
 
 I.
 
 9
 Sweeney appeals on the grounds that: 1) the district court improperly permitted the introduction into evidence of a taped conversation between Sweeney and a government informant in which the word "marijuana" was mentioned; 2) defense counsel were wrongfully restricted in cross-examining a government witness; 3) Sweeney was improperly limited from playing a large number of taped telephone conversations for the jury; and 4) the quantity of cocaine attributed to Sweeney at sentencing was inflated.
 
 A.
 
 10
 One of the key witnesses at trial was government informant Lorenzo R. Mack, who admitted to having sold and used cocaine on several prior occasions. Mack testified about his arrangements to go to Knoxville, Tennessee, in early 1987, to sell cocaine for Sweeney. Two lines of a lengthy, otherwise unobjectionable, taped telephone conversation between Mack and Sweeney, in which the word "marijuana" was mentioned, were admitted into evidence over the objections of Davis and Sweeney.[1] The district court found that the lines in issue were relevant for showing a scheme or intent, and that their probative value was not substantially outweighed by any danger of undue prejudice. Sweeney argues on appeal[2] that these lines do not show evidence of a scheme or intent related to the indicted crime, and therefore do not satisfy the admissibility requirements of Federal Rule of Evidence 404(b). According to Sweeney, that part of the conversation merely shows that he and Davis may have committed an uncharged, unrelated bad act, and is therefore highly prejudicial.
 
 
 11
 Rule 404(b) prohibits the admissibility of evidence of extrinsic wrongs which fail to satisfy both steps in a two-part analysis. See United States v. Tedder, 801 F.2d 1437, 1444 (4th Cir.1986), cert. denied, 480 U.S. 938 (1987); United States v. Masters, 622 F.2d 83 (4th Cir.1980). First, the evidence must be relevant for a purpose other than proving bad character or a criminal disposition on the part of the defendant. Tedder, 801 F.2d at 1444. Evidence which "serve[s] to 'complete the story of the crime on trial by proving its immediate context of happenings near in time and place' " is relevant, and therefore admissible. Masters, 622 F.2d at 87 (quoting C. McCORMICK, HANDBOOK OF THE LAW OF EVIDENCE Sec. 190 (E. Cleary 2d ed.1972)). In Masters, the defendant was appealing a conviction for dealing in firearms without a valid license. The admission of statements from taped conversations concerning defendant's supplies of guns, other sales of weapons, offers to sell cassettes and other musical items, and his identification of his status as a probationer did not violate Rule 404(b) because they "complete[d] the story...." Id. Similarly, by showing a connection between Sweeney and Davis, the two sentences at issue in the instant case help to complete the story of Davis's involvement with Sweeney in the indicted conspiracy.
 
 
 12
 Second, the court must determine whether the testimony's probative value is disproportionately prejudicial to the defendant. Tedder, 801 F.2d at 1444. Potential prejudice can often be counteracted by a limiting instruction to the jury, especially when the danger of prejudice is slight. Nevertheless, the determination of whether the probative value of the evidence outweighs the danger of prejudice falls squarely within the discretion of the trial court, whose decision will not be disturbed unless it is arbitrary or irrational. Masters, 622 F.2d at 87-88. The district court in this case decided that potential prejudice from the one passing reference to marijuana was insubstantial when compared to its probative value, and offered to give a cautionary instruction to the jury, either immediately before or after the jury heard the taped conversation, if requested by defendants. No such instruction was requested.[3] In so exercising its discretion, the district court did not act arbitrarily or irrationally.
 
 B.
 
 13
 Sweeney's second assignment of error concerns the courtimposed restrictions on defense counsel during the crossexamination of government informant Mack, who testified that he had sold drugs for Sweeney. Mack was immunized from prosecution on the conspiracy charge and related drug charges in exchange for his cooperation with the government.
 
 
 14
 During the course of Mack's cross-examination, Sweeney's counsel asked him, "Do you realize you could have gotten a life sentence?" The prosecutor objected to the question and the district court sustained the objection. Thereafter, in a colloquy, the court ruled that defendants were not permitted to argue any maximum penalty Mack might have faced, on the grounds that such statements were speculative[4] and would enable counsel to argue indirectly to the jury the potential penalties faced by defendants. The district court did not strike the question or give a cautionary instruction, in order to avoid unduly emphasizing the question.
 
 
 15
 "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Davis v. Alaska, 415 U.S. 308, 316-17 (1974), quoted in Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). However, the trial judge has the discretion to impose reasonable limits on cross-examination. Van Arsdall, 475 U.S. at 679. Although the district court cut off any probes into the area of potential penalties Mack might have faced, the court did allow defense counsel to inquire extensively into Mack's motives for testifying, to elicit evidence showing Mack's bias, and to argue that his testimony was tainted by self-interest. Evidence educed from Mack included that he had used and sold cocaine, and that in exchange for cooperating with the government, he would not be indicted on any charges related to the drug conspiracy. Defense counsel were permitted to argue all of these points in their attack on Mack's credibility.
 
 
 16
 In light of the fact that Mack had not been charged with any crimes, that any potential penalties were speculative, and that the limitation placed on cross-examination was not substantial, we find no abuse of discretion in disallowing discussion of potential penalties Mack might have faced. Cf. United States v. Tindle, 808 F.2d 319 (4th Cir.1986), cert. denied, 490 U.S. 1114 (1989) (no abuse of discretion in restricting defense counsel to questions on cross-examination about actual charges lodged against witness and items specifically mentioned in government's plea agreement with witness).
 
 C.
 
 17
 Sweeney also contends that the district court erred in limiting his introduction of taped telephone calls. Sweeney's arguments on this issue are specious. Although the district court refused to allow all 6,803 taped calls to be played for the jury, the judge allowed Sweeney to introduce a representative sample.
 
 
 18
 At a threshold level, defense counsel made no showing that all of the 6,803 telephone calls were relevant to this trial. In any event, Federal Rule of Evidence 403 permits relevant evidence to be excluded if its probative value is substantially outweighed by considerations of waste of time and needless presentation of cumulative evidence. We agree with the district court's ruling in regard to the 6,803 taped telephone calls.
 
 D.
 
 19
 Finally, Sweeney asserts that over 4,000 grams of cocaine were wrongly attributed to him at sentencing, due to double-counting errors and unproven quantities. Without the contested amounts, Sweeney's range for sentencing under the federal sentencing guidelines[5] would have been two levels lower than the range in which he was sentenced.
 
 
 20
 Testimony at trial regarding quantities of cocaine was extensive and confusing. At Sweeney's sentencing hearing, a Federal Bureau of Investigation case agent testified in order to untangle the trial testimony. The government witness summarized the amounts of cocaine attributed to Sweeney at trial. Sweeney's only argument in response was the bald assertion that he could not have had control of that much cocaine because he did not have the money to show for it. Sweeney presented no evidence to sustain his position.
 
 
 21
 Because "the quantity of drugs possessed ... was a statutory sentencing factor rather than a substantive element of the offense ... [, t]he government ... was obligated to prove that amount by, at most, a preponderance of the evidence." United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1144 (1990) (citation omitted). After reviewing his trial notes, his memory of testimony at trial, and the testimony given at the sentencing hearing, the district judge found that the government had met its burden of showing the quantity of drugs attributable to Sweeney by a preponderance of the evidence and agreed that the proper amount was 16,411.5 grams. We find that the district court applied the proper legal standard and that its factual finding of 16,411.5 grams of cocaine attributable to Sweeney is not clearly erroneous.
 
 II.
 
 22
 Davis and Fleming appeal their convictions on the ground that the district court erred in denying them severance. Both defendants made several motions for severance, both before and during trial. All motions for severance were denied.
 
 A.
 
 23
 Davis concedes that the initial decision to join the defendants was proper, and that his pretrial motion for severance was premature. However, Davis asserts that once the cumulative prejudice that would accrue to him by trying him with the other defendants became apparent, the court should have granted his renewed motion for severance. Davis argues that much of the physical evidence presented at trial would have been inadmissible against him if he had been tried separately, and that joining him in the trial severely impaired his sixth amendment right to effective assistance of counsel due to conflicting trial strategies among defense counsel.
 
 
 24
 The standard for reviewing a district court's ruling on a severance motion is clear:
 
 
 25
 The grant or denial of a motion for severance under Rule 14 lies within the sound discretion of the trial court and its action on such a motion will be overturned only when there has been a clear abuse of such discretion. The trial court['s] ... determination will not be disturbed unless the denial of a severance deprives the movant a fair trial and results in a miscarriage of justice. The movant must show something more than merely a better chance of acquittal and "must overcome the burden imposed by a stringent standard of review."
 
 
 26
 United States v. Santoni, 585 F.2d 667, 674 (4th Cir.1978), cert. denied, 440 U.S. 910 (1979) (citations omitted) (quoting United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir.1977)). Any potential prejudice to Davis caused by trying him with the other defendants was obviated by the ability of the jury to follow the district court's specific charge to them to give separate consideration to the evidence for and against each individual defendant and to each crime charged against each defendant. See United States v. Porter, 821 F.2d 968, 972 (4th Cir.1987), cert. denied, 485 U.S. 934 (1988). Accordingly, the district court did not abuse its discretion under Rule 14, Federal Rules of Criminal Procedure, in denying Davis's renewed motion for severance, as Davis was not deprived of a fair trial by the denial of that motion.
 
 B.
 
 27
 Fleming claims that, because of the unique factors in his situation, the district court abused its discretion in denying his renewed motions for severance or a mistrial. These factors include the conflict in the strategies of his two counsel, Patterson and Calhoun, during the early stages of trial; Patterson's allegedly inadequate cross-examination of Mack; the fact that Patterson, his lead counsel, was hospitalized after the second day of the two-week trial; and the allegedly irreconcilable conflicts between his and Sweeney's theories of the case.
 
 
 28
 Mr. Patterson was Fleming's court-appointed attorney and had been working on the case approximately two months before trial. Fleming got some money from his parents and retained Ms. Calhoun just a few days before the trial began. On the second day of the two-week trial, Patterson and Calhoun informed the court of their problems in jointly representing Fleming. After making a thorough inquiry into the matter, the district court determined that Patterson and Calhoun could work together. Both attorneys agreed the arrangement was now satisfactory, and Fleming was "positive" that it was acceptable. Calhoun also attested that she had had sufficient time to prepare the case.
 
 
 29
 On the morning of the third day of trial, the district court announced that Patterson was ill and was unlikely to be back for the duration of the trial. Calhoun assured the court that she was ready to go forward. Fleming also indicated that he was satisfied to go forward with just Ms. Calhoun representing him.
 
 
 30
 Later on during the third day of trial, Fleming had reservations about proceeding and asked Calhoun to move for a mistrial. Fleming also criticized Patterson's cross-examination of Mack. Once again the court made a diligent inquiry, including offering to recall Mack so that Calhoun could cross-examine him further. Ms. Calhoun informed the court that she would not have asked any questions of Mack other than those asked by Patterson. The district judge denied the motion for a mistrial or severance, based on Calhoun's representations that she felt competent to go forward and she was satisfied with the cross-examination of Mack, and based on the fact that trial testimony up to that point had not centered around Fleming to any great extent.
 
 
 31
 On the fifth day of trial, Fleming again moved for a mistrial or severance, on the grounds that Sweeney's cross-examination of Federal Bureau of Investigation Agent Donohue was highly prejudicial to Fleming. The district court found that the differing defense theories were not so irreconcilable as to warrant severance.
 
 
 32
 The trial court's denial of a motion for severance will not be overturned on appeal unless the trial court clearly abused its discretion, thereby depriving defendant of a fair trial and resulting in a miscarriage of justice. See supra at 11. Fleming has failed to demonstrate that he was prejudiced by the situations which prompted his renewed motions for severance or a mistrial, and consequently failed to show that he did not receive a fair trial.
 
 
 33
 Finding no abuse of discretion on the part of the district court in denying those motions, we affirm.
 
 III.
 
 34
 For the foregoing reasons, the judgments of the district court are
 
 
 35
 AFFIRMED.
 
 
 36
 WIDENER and PHILLIPS, Circuit Judges, joined.
 
 
 
 [1]
 The two lines at issue are:
 LM: I thought Rudolph had got a case with that marijuana.
 RS: Yes, but he went to jail and got out the same night.
 Lorenzo Mack and appellant Robert Sweeney are the speakers. The two are allegedly referring to appellant Davis, whose middle name is Rudolph.
 
 
 [2]
 Davis has not raised this issue on appeal
 
 
 [3]
 At trial, this issue was ruled on after a colloquy between Mr. Dodson (Davis's counsel), the court, and the prosecutor. Other than joining in the objection, Sweeney's counsel did not participate in the discussion. The colloquy ended with Dodson ensuring that he would have the opportunity to ask for a cautionary instruction, if he so chose. Later that same day, again out of the jury's hearing, the issue was brought up a second time by Dodson. He stated that after consultation with his client, he agreed that a cautionary instruction would place undue emphasis on a very minor part of the tape. The court then asked Dodson twice if he was requesting that a cautionary instruction be given. Both times Dodson answered in the negative. Accordingly, the court stated that, in light of Dodson's comments, it would not give a cautionary instruction. At no time did Sweeney's counsel request a cautionary instruction on this point
 
 
 [4]
 Penalties for conspiracy for possession with intent to distribute vary depending on the amount of cocaine involved
 
 
 [5]
 Since the offenses were committed after November 1, 1987, the sentence was governed by the Sentencing Reform Act of 1984, 18 U.S.C. Secs. 3551, et seq., and the sentencing guidelines promulgated by the United States Sentencing Commission