**UNITED STATES of America**

v.

**Gregory BRIDGES, Defendant.**

**No. 99–11–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 14, 1999.

Helen Fahey, United States Attorney, Daniel Bell, AUSA, Alexandria, VA, Bruce Morton, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for plaintiff.

Thomas J. Foltz, Alexandria, VA, for defendant.

**MEMORANDUM OPINION**

ELLIS, District Judge.

Presented here on a motion *in limine* is the question whether admissions made by defendant's attorney to the Internal Revenue Service (IRS) agent investigating possible criminal tax fraud by defendant are inadmissible as statements "made in the course of plea discussions" pursuant to

Rule 410, Fed.R.Evid., and Rule 11(e)(6), Fed.R.Crim.P.

## I.

Defendant Gregory Bridges is charged in an indictment with 31 counts of preparing false tax returns for third parties in violation of 26 U.S.C. § 7206(2). In essence, the indictment alleges that Bridges knowingly prepared tax returns for third parties that i) overstated Schedule A itemized deductions and ii) claimed illegitimate credits. More specifically, the government contends that Bridges knowingly overstated deductions by using a so-called "AGI [adjusted gross income] percentage" method of determining itemized deductions. Under this method, an arbitrary percentage of a taxpayer's adjusted gross income, sometimes close to 50%, is allocated among medical, mortgage, charitable contribution and employee business expense deductions without regard to whether there actually were any expenditures on these items. The government further contends that in the case of four taxpayer returns, Bridges knowingly claimed a credit for a non-existent "Black Tax Credit."

Bridges pled not guilty to the indictment, contending that he thought that the AGI percentage method was legitimate as he learned it from one Nathaniel Thomas, a person he thought was an experienced tax preparer whose wife, in addition, worked for the IRS. Bridges also contends that he thought the "Black Tax Credit" was a legitimate tax credit African Americans could claim as reparations for slavery and other oppressive treatment suffered by African Americans.[1] Bridges further contends that he suffers from learning disabilities and a low sense of self worth, and

that this prevents him from forming the requisite criminal intent.

The investigation into Bridges' alleged criminal conduct began with IRS Special Agent Karen Henderson's review of an individual's return. This review, coupled with an interview of the individual whose return was at issue, triggered an examination of other returns prepared by Bridges. This examination disclosed 61 additional returns with itemized deductions that were an unusually high percentage of adjusted gross income.[2] Based on this information, and on the interview with the individual, Agent Henderson, with the assistance of an Assistant United States Attorney (AUSA), obtained a search warrant for Bridges' home, which was executed on June 26, 1996.

Less than a week later, David G. Brickley, an experienced criminal attorney, appeared with Bridges as his counsel at a meeting at the IRS on July 2, 1996.[3] At that meeting, Brickley stated that Bridges was "more than willing to cooperate," including acting as an informant in the investigation of Nathaniel Thomas, the individual who allegedly taught defendant the AGI tax method he used. At the July 2, 1996 interview, Brickley was also given the standard IRS power of attorney form, which was thereafter executed by Bridges and then filed with the IRS by a letter from Brickley dated September 4, 1996. This power of attorney authorized Brickley to represent Bridges in "all matters relating to the on-going criminal investigation of Gregory Antonio Bridges by the Internal Revenue Service."

Approximately one week after the filing of the power of attorney, Agent Henderson sent Brickley a letter that, *inter alia*, described in detail a "simultaneous plea pro-

---

1. Women, it appears, were deemed to have suffered less than men, as a $9,146 credit was claimed for men, while only $8,138 was claimed for women.

2. It now appears that defendant may have been responsible for the preparation of as many as 600 returns from 1992 to 1995. It is

unclear how many of these returns were prepared using the AGI method or claiming a Black Tax Credit.

3. The facts recited here are derived from a hearing on March 26, 1999, at which Brickley testified.

gram" and suggested that the investigation could be streamlined if Bridges elected to participate in the program.[4] Also included in Agent Henderson's letter was the applicable section of the Internal Revenue Manual stating that "plea negotiation authority rests solely with the Department of Justice."

Approximately three months later, on December 17, 1996, Agent Henderson and Brickley engaged in a telephone conversation that included the disputed statements. Brickley and Agent Henderson agree that during this conversation Brickley stated that his client was willing to cooperate. Agent Henderson contends that she then asked Brickley if Bridges was interested in pleading guilty, and that Brickley responded "yes."[5] For his part, Brickley flatly denies that he was asked such a question or gave such an answer, and he further testified without equivocation that he was not authorized by his client to make such a statement. Brickley and Agent Henderson also disagree as to the conclusion of the conversation. Agent Henderson contends that she explained that tax confidentiality laws prevented the IRS from sharing the information obtained during its investigation with the U.S. Attorney's office, but stated that if Bridges elected to participate in the simultaneous plea program, Brickley might expedite matters by writing a letter to the U.S. Attorney's office requesting that the IRS disclose the tax information to the U.S. Attorney. In this regard, she claims she offered to send Brickley samples of such letters, and that Brickley accepted.[6] For his part, Brickley denies that this exchange occurred; he testified, instead, that he received such sample letters from Agent Henderson months earlier along with the September 13 letter describing the simultaneous plea program. In any event, just over a week later, on December 26, 1996, Agent Henderson sent Brickley, by facsimile, the name and telephone number of the AUSA to contact should Bridges wish to participate in the simultaneous plea program. Ultimately, Brickley did not contact the AUSA and Bridges pled not guilty. In January 1998, Brickley informed the U.S. Attorney's office that he no longer represented Bridges. The indictment followed a year later.

## II.

The precise question presented is whether Agent Henderson may testify at trial that Brickley responded affirmatively when asked whether his client, Bridges, was interested in pleading guilty. The government contends that because Agent Henderson had no authority to negotiate a plea, the statement was not made in the course of plea negotiations and thus is admissible. Bridges counters by claiming that, notwithstanding Agent Henderson's actual lack of authority to negotiate a plea, the statement, assuming that it was made, is inadmissible as Brickley, in the circumstances, would have been reasonable in believing that his discussion with Agent Henderson occurred in the course of plea discussions.

While there appears to be no controlling circuit authority on this question, there are well-established general principles that are instructive. First, *in haec verba*, Rule 410, Fed.R.Evid., and Rule 11(e)(6), Fed.R.Crim.P., render inadmissible "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not

4. The record is unclear on when, if ever, prior to the September 13, 1996 letter, the subject of the simultaneous plea program arose. In any event, this point is immaterial to resolution of the question at bar.

5. The facts as to Agent Henderson's recollection of the phone call are derived from her affidavit submitted by the government in connection with this motion.

6. It is worth noting that even assuming Agent Henderson's recollection of the conversation is correct, she does not claim to have expressly stated in that conversation that she did not have plea negotiating authority.

result in a plea of guilty or which result in a plea of guilty later withdrawn." [7] And this is true whether the statement is made by the defendant or an attorney of the defendant authorized to do so,[8] and whether the statement is made to a government attorney, or to an individual with authority from a government attorney to negotiate a plea.[9] Importantly it is also clear that statements made in an effort to initiate plea bargaining fall within the definition of plea discussions under the rules. *See United States v. Brooks*, 536 F.2d 1137, 1139 (6th Cir.1976) (" '[E]ven an attempt to open plea bargaining [is] covered under the same rule of inadmissibility.' ").[10] And finally, it is generally true that whether the discussions between an accused and law enforcement are plea negotiations pro-tected by Rule 11(e)(6) and Rule 410 is "a decision driven by the specific facts and circumstances surrounding the interchange at issue." [11]

These general principles are not dispositive of the question whether the statement at issue occurred in the course of plea discussions. What is needed is a more sharply focused test to distinguish between statements made in the course of plea negotiations and those that are not. Although no such test has been adopted in this circuit, other courts have applied a two-tiered test that focuses on the speaker's state of mind, and asks whether his subjective expectation that a statement is being made in the course of plea discussions was objectively reasonable given the totality of the circumstances.[12] This test

---

**7.** *See also United States v. Crist*, 865 F.2d 1260, 1989 WL 1062, *3, n. 3 (4th Cir.1989) (unpublished disposition) ("Rule 11(e)(6)(D) is virtually identical to Rule 410(4), . . . and the two may be discussed interchangeably.") (citing *United States v. Sebetich*, 776 F.2d 412, 421 n. 13 (3d Cir.1985)).

**8.** *See* Advisory Committee Notes on the 1979 Amendment to Rule 11(e)(6) ("[The applicability of the section] is not limited to statements by the defendant himself, and thus would cover statements by defense counsel regarding defendant's incriminating admissions to him.").

**9.** In *United States v. Porter*, 821 F.2d 968, 976 (4th Cir.1987), the Fourth Circuit stated that "[p]lea negotiations, in order to be inadmissible, must be made in negotiations with a government attorney or with that attorney's express authority," thus making clear that despite the literal language, Rule 410 does apply to discussions conducted with individuals other than government attorneys. *Porter* does not, however, address the instant circumstances, where the defendant argues that he had an objectively reasonable, subjective belief that he was speaking to someone with negotiating authority.

**10.** *See also* Advisory Committee Notes to Rule 11, 1979 Amendment, Note to Subdivision (e)(6) ("[B]y relating the statements to 'plea discussions' rather than 'an offer to plead,' the amendment ensures 'that even an attempt to open plea bargaining [is] covered under the same rule of inadmissibility.' ").

**11.** *See United States v. Fronk*, 173 F.R.D. 59, 66 (W.D.N.Y.1997) (noting that "such determinations are not amenable to bright line rules or easy to apply legal litmus tests").

**12.** This test was first enunciated by the Fifth Circuit in *United States v. Robertson*, 582 F.2d 1356 (5th Cir.1978), a case decided before the 1979 amendments to Rule 11(e)(6). *See Robertson*, 582 F.2d at 1366; *see also* Annotation, 60 A.L.R.Fed. 854 (1982) ("In deciding whether plea bargaining took place in a given set of circumstances, courts have adopted a two-tiered analysis which determines, first, whether the accused exhibited an actual subjective intent to negotiate a plea at the time in question, and second, whether his expectation was reasonable given the totality of the circumstances. Both conditions must be met, or the statement will not be protected by Rule 11(e)(6)."). Courts continue to apply this test. *See, e.g., United States v. Conaway*, 11 F.3d 40, 42 (5th Cir.1993) (stating Fifth Circuit uses two-part *Robertson* test to evaluate claim that records should be excluded under Rule 410 and Rule 11(e)(6)); *United States v. Little*, 12 F.3d 215, 1993 WL 501570, *3 (6th Cir.1993) ("[W]e adopt the test set forth in *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978). . ."); *United States v. Sitton*, 968 F.2d 947, 957 (9th Cir.1992) ("[C]onversations with government agents do not constitute plea discussions unless the defendant exhibits a subjective belief that he is negotiating a plea, and that belief is reasonable under the circumstances."); *United States v. Leon Guerrero*, 847 F.2d 1363, 1367 (9th Cir.1988) ("A statement was made in the course of plea

focuses not on whether the government agent had actual authority to negotiate a plea, but rather on the state of mind of the attorney dealing with the government agent. This focus is both sensible and fair given that the Rules invite and encourage attorneys to make statements in the course of plea discussions that would otherwise not be made. To have the scope of Rules 410 and 11(e)(6) turn simply on whether the government agent had actual authority to negotiate a plea, as the government argues, would create an unfair trap for the unwary defendant or defense attorney and perhaps invite government agents to set or spring unfair traps by calculated questions or remarks.[13]

■ This test, applied here, compels the conclusion that Brickley's statement is protected by Rule 410 and Rule 11(e)(6). The subjective and objective prongs of the test, given the instant facts, collapse into one inquiry because the factors indicating Brickley's subjective belief are the same factors that demonstrate that such a belief was objectively reasonable. First, Brickley's testimony that he believed that Agent Henderson was working hand and hand with the U.S. Attorney's Office was not only credible, it was entirely reasonable given that Agent Henderson was Brickley's sole source of information about the simultaneous plea program up to the point the disputed statement was alleged to have occurred.[14] Second, Brickley is an experienced criminal attorney; the response he is alleged to have made to Agent Henderson's question went beyond a mere explanation of defendant's position on the facts of the case, and instead affirmatively indicated an intention to plead guilty, which an experienced attorney would not do unless he thought he was opening the plea discussions with someone that he thought had authority to initiate such discussions, if not the final authority to make a deal.[15] And finally, and perhaps most significantly, the statement at issue was

discussions if: (1) the suspect exhibited an actual subjective expectation that he was negotiating a plea at the time of the discussion; and (2) the suspect's expectation was reasonable given the totality of the circumstances."); *Fronk,* 173 F.R.D. at 67 (collecting cases applying *Robertson* test and finding defendant's statement inadmissible under test); *United States v. Melina,* 868 F.Supp. 1178, 1181 (D.Minn.1994) (defendant's statements to police officer inadmissible under *Robertson* test); *United States v. Swidan,* 689 F.Supp. 726, 728 (E.D.Mich.1988) (rejecting the government's argument that "only discussions with an attorney for the prosecuting authority or someone expressly authorized by him or her are inadmissible under this rule," and applying *Robertson* test in order to effectuate purpose of rule, *i.e.,* to protect plea discussion process); *United States v. Mannino,* 551 F.Supp. 13, 18 (S.D.N.Y.1982) ("Although this Circuit has not adopted the two-tiered analysis of *Robertson,* in cases in which it has considered Rule 11(e)(6)(D) the Circuit has focused upon the *Robertson* factors, i.e., whether the defendant in fact believed he was negotiating a plea at the time of the admissions and whether the expectation was reasonable.").

**13.** *See Swidan,* 689 F.Supp. at 728 ("Under the government's proposed strict interpretation of Fed.R.Evid. 410(4) [*i.e.* only discus-

sions with prosecuting attorney or someone expressly authorized by the prosecuting attorney are covered], an agent need only propose to relay any offers to the prosecuting attorney, and thus preserve the government's freedom to choose to enter into plea discussions or to use the statements against the accused. This does not protect the plea discussion process.").

**14.** *See Bridges,* Transcript at 30 ("My understanding is that the agent works hand in hand with the prosecuting attorney...") (testimony of D. Brickley); *id.* at 32 ("It was my impression that [Henderson] was working with the United States Attorney's Office.") (testimony of D. Brickley).

**15.** *See also United States v. Porter,* 821 F.2d 968, 976 (4th Cir.1987) (noting as to statements found not excludable under Rule 410 that i) defendant did not offer to plead guilty and ii) defendant was explicitly told after defendant expressed wish not to be prosecuted in exchange for working undercover that officer hand no authority to make such a deal); *see also United States v. Gregory,* 871 F.2d 1239, 1243 (4th Cir.1989) (noting as significant the absence of any suggestion that the disputed statement exposed the defendant to criminal liability and ultimately reversing for failure to admit the statement).

made only after it was solicited by the government agent; it was not simply volunteered.

Assuming *arguendo* that the statement was made, it is clear it was made in response to a direct question by a government agent whose conduct, however unintentionally, created the appearance of authority to initiate negotiations, authority that the government agent did not clearly and explicitly disclaim.[16] In short, the question and response, if they occurred, were an attempt to open plea discussions, and as such, Brickley's statement was made "in the course of plea discussions" by Rule 410 and Rule 11(e)(6).[17] In these circumstances, the statement is inadmissible under Rule 410, Fed.R.Evid. and Rule 11(e)(6), Fed. R.Crim.P.

### III.

Even assuming the statement's admissibility under Rule 410, Fed.R.Evid., and Rule 11(e)(6), Fed.R.Crim.P.,[18] there are separate and independent grounds for exclusion under Rule 403, Fed.R.Evid.[19] In this circuit, "[t]o exclude evidence pursuant to Rule 403, the district court must be convinced 'that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *See United States v. Van Metre,* 150 F.3d 339, 351 (4th Cir. 1998) (quoting *United States v. Powers,* 59 F.3d 1460, 1467 (4th Cir.1995)). Here, that risk exists.

In this case, there is a substantial risk that evidence of the statement, if admitted, would be of little probative value, while fraught with unfair prejudice. The unfair prejudice that would result from admission of the evidence is severe, as the statement appears to admit guilt, while there is serious doubt that defendant authorized it. As such, it seems less an admission of guilt by defendant than, at most, the defense attorney's evaluation of the merits. At the same time, for some of the same reasons, the probative value of the statement is slight. Whether the statement was made at all is hotly disputed. And there is no evidence, apart from the power of attorney, that the defendant authorized the statement. The power of attorney is general; it only empowers the attorney to make statements on behalf of the defendant that are authorized by the defendant. It does not operate to confer blanket authority on defense counsel to make specific unauthorized statements. In short, a general power of attorney does not give the attorney authority to initiate plea discussions without his client's consent.

For each of these alternative independent reasons, the exchange between Agent Henderson and Brickley during the December 17, 1996 phone call must be excluded.

An appropriate Order has issued.

---

**16.** Brickley's only indication that the AUSA had sole negotiating authority was contained in the portion of the Internal Revenue Service Manual that was attached to the September 13, 1996 letter. This does not preclude his reasonable conclusion that Agent Henderson had the authority to initiate plea negotiations, especially given her various references to the simultaneous plea program, and the fact that she asked whether defendant was interested in pleading guilty.

**17.** *See United States v. Brooks,* 536 F.2d 1137, 1139 (6th Cir.1976) (" '[E]ven an attempt to

open plea bargaining [is] covered under the same rule of inadmissibility.' ").

**18.** The Advisory Committee Notes to Rule 11 emphasize that even if a statement is "not covered by the per se rule of 11(e)(6)," it is nonetheless subject to "that body of law dealing with police interrogations."

**19.** Rule 403, Fed.R.Evid., provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."