**UNITED STATES of America, Appellee,**

v.

**Benito P. DAVILA, Appellant.**

**No. 91–2850.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1992.

Decided May 15, 1992.

Rehearing and Rehearing En Banc Denied June 24, 1992.

Vincent M. Powers, Lincoln, Neb., argued, for appellant.

Bruce Wellesley Gillan, Lincoln, Neb., argued (Ronald D. Lahners and Bruce W. Gillan, on brief), for appellee.

Before ARNOLD, Chief Judge, MAGILL, Circuit Judge, and LARSON,* Senior District Judge.

* THE HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

MAGILL, Circuit Judge.

Benito Davila appeals his conviction for conspiracy to distribute marijuana, possession of marijuana with intent to distribute, and money laundering. He also appeals the sentence imposed by the district court.[1] He raises seven claims challenging his convictions and seven claims challenging his sentence. Because we conclude that none of these claims have merit, we affirm.

I.

On October 18, 1990, Davila was indicted for conspiracy to distribute marijuana and cocaine, possession of marijuana with intent to distribute, distribution of cocaine, and money laundering. Following his arrest, Davila sought to cooperate with the government in exchange for a plea agreement.[2] To determine whether a plea agreement with Davila would be beneficial, the government entered into a proffer agreement with him. Pursuant to this agreement, Davila would make an "off-the-record" statement about the assistance he could provide in the investigation or prosecution of other persons. The agreement also provided that the government could not use any information from Davila's statement in its case-in-chief, but that it could use the information on cross-examination to counter materially different testimony. Subsequent to Davila's statement, the government rejected Davila's offer of cooperation and refused to enter a plea agreement. Davila pled not guilty to all counts. At trial, Davila's counsel admitted that Davila was an "old time pot dealer," and focused his defense on the cocaine counts. His trial strategy worked. The jury found Davila guilty of only conspiracy to distribute marijuana, possession of marijuana with intent to distribute, and money laundering. The jury acquitted Davila of conspiracy to distribute cocaine and distribution of cocaine.

Following the trial, the district court obtained a presentence report on Davila that recommended a sentencing range under the Sentencing Guidelines. Because the government and Davila raised numerous objections to this report, the court held a sentencing hearing. At this hearing, Davila intended to establish, *inter alia,* that he was entitled to a downward departure from the recommended sentencing range for substantial assistance. His justification for this departure was that the government acted in bad faith when it entered the proffer agreement with no intent of entering a plea agreement. To establish this bad faith, Davila sought to call certain government representatives. The district court ruled that Davila could call these witnesses and question them about his willingness to cooperate, but that he could not question them about why the government chose not to enter a plea agreement with him. The court stated that it was limiting Davila's questions because "the prosecutor has sole discretion as to whom to prosecute and with whom to make cooperation agreements, including plea agreements."

The court subsequently resolved most of the contested sentencing issues in favor of the government. It concluded that Davila's total offense level was thirty-four based on a drug quantity of 1000 pounds of marijuana, a four-level enhancement for his aggravating role in the offense, and a two-level enhancement for obstruction of justice. The court refused to grant Davila a reduction for acceptance of responsibility. With a criminal history category of III, Davila's sentencing range was 188 to 235 months. Because the court concluded that Davila's criminal history category understated Davila's prior criminal conduct, however, the court departed upward from this range and imposed a sentence of 264 months for the conspiracy conviction, and 240 months for each of the remaining convictions, all to run concurrently. Davila now appeals both his convictions and his sentence.

II.

A. Conviction Claims

■ Davila raises seven claims challenging his convictions. First, he claims that

---

1. The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska.

2. This opinion uses the term "plea agreement" and "cooperation agreement" interchangeably.

two counts of the indictment did not properly charge him because they referred to him as a defendant named in the conspiracy count rather than by name. This claim is without merit. There is no requirement that the indictment state the defendant's name in each count. *See United States ex rel. Nelson v. Wyrick*, 422 F.Supp. 139, 140 (E.D.Mo.1976) (finding no defect in an indictment that did not mention the defendant by name in the body of the indictment, but referred to him as "the defendant"). Rather, allegations made in one count, such as the name of the defendant, may be incorporated by reference in another count. Fed.R.Crim.P. 7(c)(1).

■ Second, Davila argues that the money laundering counts were fatally defective. This argument also is without merit. The money laundering counts track the language of 18 U.S.C. § 1956(a)(1)(A)(i) (1988), the money laundering statute, and set forth the specific facts constituting the offense. This is sufficient.[3] *See United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir.1985) (holding that an indictment setting out the elements of the offense and the specific facts constituting the offense is sufficient).

■ Third, Davila claims that the court erred in allowing the government to introduce out-of-court statements of Dale Wedland, a co-conspirator, because the government did not include Wedland's name in the list of co-conspirators the government sent to Davila. As a general rule, statements of co-conspirators are admissable if the government demonstrates that a conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the declarations were made in the course of and in furtherance of the conspiracy. *See, e.g., United States v. Hoelscher*, 914 F.2d 1527, 1539 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991). The district court specifically found that this standard was met and we find no error in its ruling. The district court also found that the government's inadvertent failure

to include Wedland on the list of co-conspirators sent to Davila did not prejudice the defense. Accordingly, it refused to grant Davila's motion for mistrial. We agree that Davila failed to show any prejudice, and thus was not entitled to a mistrial. *Cf. United States v. Porter*, 850 F.2d 464, 465 (8th Cir.1988) (finding no reversible error because defendant failed to show any prejudice resulting from the government calling a witness not named on its pretrial witness list).

■ Fourth, Davila claims that he was entitled to a mistrial when the prosecutor asked a witness about what the prosecutor had previously told her. Given that this question was in direct response to questioning by defense counsel regarding the prosecutor's prior statement, we are not convinced the prosecutor's question was improper. Even if it was, Davila has not established prejudice. *See United States v. Neumann*, 887 F.2d 880, 886 (8th Cir. 1989) (holding that reversible error premised on prosecutorial misconduct exists only when prosecutor's remarks are improper and defendant is prejudiced), *cert. denied*, 495 U.S. 949, 110 S.Ct. 2210, 109 L.Ed.2d 536 (1990).

■ Fifth, Davila argues that the trial court erred in allowing a witness to identify Davila in court following an impermissibly suggestive single-photo identification. Even assuming that the witness was shown a single photo of Davila, which is contested, we agree with the district court that the in-court identification was reliable under the totality of the circumstances. *See United States v. Murdock*, 928 F.2d 293, 297 (8th Cir.1991). The witness testified that he had ridden next to a person he identified as Davila for over one hour during daylight hours. At the very least, we find the in-court identification harmless beyond a reasonable doubt given the overwhelming evidence of Davila's guilt. *See United States v. Wade*, 740 F.2d 625, 628 (8th Cir.1984); *United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir.1987), *cert.*

---

**3.** We also reject Davila's claim that the evidence was insufficient for the jury to find him guilty of money laundering.

*denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988).

■ Sixth, Davila claims that the court erred in allowing a police officer to sit at counsel table for the government. We find no error. Precedent in this circuit clearly allowed the court to make this ruling. *United States v. Jones,* 687 F.2d 1265, 1267–68 (8th Cir.1982); *see also* Fed. R.Evid. 615 (entitling attorney for a nonnatural party to designate an officer or employee of the party who can remain in the court despite a sequestration order).

■ Finally, Davila challenges the district court's instruction on the conspiracy count. Specifically, Davila argues that because the indictment charged him with conspiracy to distribute cocaine *and* marijuana, the court's instruction requesting a special verdict on whether the conspiracy, if any, involved only cocaine, only marijuana, or both impermissibly amended the indictment. This circuit rejected this identical argument in a previous case. *See United States v. Lueth,* 807 F.2d 719, 732–34 (8th Cir.1986). Not only do we find the reasoning in this case correct, we are without power to overturn it. *E.g., Woodard v. Sargent,* 806 F.2d 153, 156 (8th Cir.1986) (one panel of this circuit cannot overturn the decision of a prior panel).

## B. Sentencing Claims

■ Davila initially argues that the court should not have sentenced him under the Sentencing Guidelines. This claim is without merit. This circuit has ruled that the guidelines apply to conspiracies that began before the effective date of the guidelines and end after it, as did the Davila conspiracy. *United States v. Tharp,* 892 F.2d 691, 695 (8th Cir.1989). The other counts all occurred after the guidelines' effective date.

■ In the alternative, Davila raises six claims challenging the district court's application of the guidelines. Three of these claims relate to the district court's calculation of the total offense level. First, Davila claims that the court incorrectly calculated the quantity of marijuana involved in the conspiracy, and thus erred in finding a base offense level of twenty-eight. Specifically, Davila argues that he distributed only 175 to 200 pounds of marijuana in Nebraska, and that the amount of marijuana he distributed in other states during the same time period is uncharged conduct that the court should not have included in the quantity calculation. The guidelines, however, expressly provide that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider ... similar transactions in controlled substances by the defendant." U.S.S.G. § 2D1.4, comment. (n. 2). Additionally, the guidelines provide that the base offense level should be based on all "acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

■ We find no clear error in the district court's finding that Davila's distribution of marijuana to states other than Nebraska was part of the "same course of conduct" as the charged conspiracy. *United States v. Lawrence,* 915 F.2d 402, 406–08 (8th Cir.1990); *United States v. Gooden,* 892 F.2d 725, 728–29 (8th Cir.1989), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990). Davila testified that he obtained this marijuana from the same sources as the marijuana sent to Nebraska and distributed it during the same time period. Sentencing Tr. at 79–87. We also uphold the district court's quantity calculation. A preponderance of the evidence supports the district court's finding that Davila distributed 1000 pounds of marijuana nationwide during the period of the conspiracy. At the sentencing hearing, Davila testified that, during this period, he brokered approximately 800 to 1000 pounds of marijuana. Sentencing Tr. at 75–81 (held July 29, 1991). Although, in retrospect, Davila may wish he had not been so forthright about the extent of his criminal activity, he cannot now challenge the

court's reliance on his voluntary answers to questions at the sentencing hearing.[4]

■ Davila's second challenge to the offense level calculation is that the court erred in imposing a two-level enhancement for obstruction of justice. The guidelines provide that such an enhancement is proper when a defendant threatens a co-defendant or witness. U.S.S.G. § 3C1.1, comment. (n. 3). We find no clear error in the district court's conclusion that Davila threatened a co-conspirator to keep her from going to the authorities. *See United States v. Penson*, 893 F.2d 996, 998 (8th Cir.1990); *United States v. Johnson*, 911 F.2d 1394, 1402 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 761, 112 L.Ed.2d 781 (1991).

■ Third, Davila claims that the court erred in denying a two-level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. Although Davila voluntarily admitted his involvement in the offense to the government and offered to cooperate in further investigations, this conduct does not automatically entitle him to an acceptance of responsibility reduction. It appears that Davila's primary motive in cooperating with the government was to obtain a reduction in his sentence, not a sense of remorse over his past conduct. Davila also put the government to its burden of proof by pleading not guilty to all counts. Given these facts, we find no clear error in the district court's denial of the reduction. *See, e.g., United States v. Grimes*, 899 F.2d 731, 732–33 (8th Cir.) (upholding denial of reduction even though defendant gave government information on other criminal activity), *cert. denied*, — U.S. —, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990).

■ Davila also claims that the disparity in sentences between himself and his co-conspirators constitutes a due process violation. This argument is without merit. Davila has failed to establish that he is similarly situated with his co-conspirators. Davila was the "ring leader" of the conspiracy. Additionally, his co-conspirators entered into plea agreements. *United States v. Jackson*, 959 F.2d 81, 83 (8th Cir.1992) (finding that two co-conspirators were not similarly situated because one had entered a plea agreement and received a downward departure for cooperation). Thus, the disparity between their sentences is easily explained.

■ Davila's fifth challenge is that the court erred in departing upward from the guidelines' sentencing range. When reviewing sentences that depart upward from the applicable sentencing range, this court must consider: "(1) whether, as a question of law, the circumstances the district court relied on for departure are sufficiently unusual in kind or degree to warrant departure; (2) whether, as a question of fact, the circumstances justifying departure actually exist; and (3) whether the sentence is reasonable." *United States v. Lloyd*, 958 F.2d 804, 805 (8th Cir.1992); *see also United States v. Lang*, 898 F.2d 1378, 1379–80 (8th Cir.1990).

In this case, the district court departed upward because it concluded that Davila's criminal history category did not adequately reflect the seriousness of his past criminal conduct or the likelihood that he would commit future crimes. Davila had a criminal history category of III, based on four criminal history points. He received two points because he committed the current offense while on probation. He received one point from a 1985 conviction for felony possession of over 100 pounds of marijuana. His fourth point came from a 1990 conviction for attempting to invest $42,100 in marijuana. Davila received only a ten-year suspended sentence and probation for each of these convictions. At the sentencing hearing, the district court noted that

---

4. We also reject Davila's claim that the court violated the Sentencing Guidelines by using his proffer statement to determine the quantity of drugs for sentencing purposes. *See* U.S.S.G. § 1B1.8; *see also United States v. Shorteeth*, 887 F.2d 253, 255–57 (10th Cir.1989) (holding that the court could not use the information revealed by the defendant under a cooperation agreement in calculating the quantity of drugs absent an explicit statement in the agreement disclosing that defendant's statement could be used in sentencing). The district court clearly relied on Davila's testimony at the sentencing hearing, and not on information in the proffer statement, to calculate the quantity of drugs. App. at 8.

these sentences were surprisingly lenient. Sentencing Tr. at 22–24 (held August 1, 1991). In fact, if Davila's two prior convictions had each resulted in a sentence of imprisonment exceeding one year and one month rather than a ten-year suspended sentence, Davila would have had a criminal history category of IV, and a sentencing range of 210 to 262 months.[5] The district court also cited a number of other factors to support its upward departure. First, the district court noted that a number of convictions, including a 1973 conviction for possession of marijuana with intent to deliver, were not included in the criminal history category because they were too old. Second, the court noted that a 1987 conviction for aggravated possession of cocaine was not included because it was on appeal. Third, Davila had dealt drugs with two persons who were under twenty-one years of age. Finally, the court noted that Davila's long history in the drug trade and his failure to stop dealing even after his prior convictions indicated that a long sentence was required to deter him from continuing his marijuana distribution. Based on these factors, the court departed upward from a sentencing range of 188 to 235 months to a sentence of 264 months.

A court may depart upward from the applicable sentencing range when there exist aggravating "circumstances of a kind, or to a degree, not adequately taken into consideration" by the guidelines. U.S.S.G. § 5K2.0, p.s. The Sentencing Guidelines expressly recognize that, at times, the criminal history category may not adequately reflect the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. U.S.S.G. § 4A1.3, p.s. When this occurs, an upward departure from the applicable sentencing range is appropriate. We agree with the district court that the factors discussed above indicate that Davila's criminal history category of III understates his prior criminal conduct and the high probability of recidivism. *United States v. Saunders,* 957 F.2d 1488, 1492–93 (8th Cir.1992) (up-

holding upward departure for similar reasons); *United States v. Feinman,* 930 F.2d 495, 502 (6th Cir.1991) (upholding upward departure based on defendant's long association with the drug trade). Therefore, if these factors actually exist, we conclude, as a matter of law, that they are sufficiently unusual to justify a departure.

■ We find no clear error in the district court's conclusion that the above factors exist. Davila's prior convictions and the sentences that he received are a matter of public record. There also was sufficient evidence to support the district court's conclusion that Davila had dealt drugs with persons under twenty-one and that Davila had engaged in the drug trade for many years. Although the district court did fail to note that Davila's 1987 conviction for cocaine possession had been overturned on appeal and was pending before a Texas trial court, this error does not justify reversal of Davila's sentence. We do not believe this error affected the district court's decision to depart. Rather, we believe the court simply misstated the posture of the case. The presentence report specifically noted that the 1987 conviction had been overturned and was again pending before the trial court. *See Davila v. State,* 767 S.W.2d 205 (Tex.App.1989).

■ Our final step in reviewing the district court's upward departure is to determine whether the sentence is reasonable. We conclude that it is. The district court's sentence of 264 months was only twenty-nine months above the applicable sentencing range, and fell well within the range for a defendant with a criminal history category of V. Given Davila's long criminal history, it was not unreasonable to sentence him within this range.

■ Finally, Davila claims that the district court erred in refusing to depart downward from the sentencing range. Although this court does not have authority to review a sentencing court's discretionary decision not to depart from the sentencing

---

5. The number of criminal history points resulting from a conviction depends on the length of the imprisonment sentence, not including any

suspended portion of the sentence. U.S.S.G. §§ 4A1.1, 4A1.2.

range, we can review a claim that the sentencing court believed it lacked authority to depart when, in fact, it had authority. *United States v. Evidente*, 894 F.2d 1000, 1004–05 (8th Cir.), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). In this case, it is not clear why the district court refused to depart. We need not resolve this issue, however, because we do not believe the court had authority to depart downward.

Davila argues that the court had authority to depart downward because the government acted in bad faith by refusing his offer to cooperate in the investigation of other persons. A sentencing court may depart downward "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense...." U.S.S.G. § 5K1.1, p.s. This circuit has held that, as a general rule, a government motion for departure is a prerequisite to departure for substantial assistance. *E.g., United States v. Kelley*, 956 F.2d 748, 757–58 (8th Cir.1992) (en banc); *United States v. Smitherman*, 889 F.2d 189, 191 (8th Cir.1989), *cert. denied*, 494 U.S. 1036, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990). The government did not make a downward departure motion in this case.

This circuit, however, has recognized that in certain "egregious cases" that present due process concerns, the court may depart without a government motion. Such a case arises when the defendant clearly has provided substantial and valuable assistance, but the government has arbitrarily and in bad faith refused to make a motion for departure. *Kelley*, 956 F.2d at 752, 755; *United States v. Justice*, 877 F.2d 664, 668–69 (8th Cir.), *cert. denied*, 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989). We do not believe that this is the rare "egregious case" where the court could have departed without a government motion.

This is not a case where the government agreed to make a departure motion and then reneged on the agreement. Davila and the government did engage in plea negotiations pursuant to which Davila made an "off-the-record" statement to authorities. A letter sent to Davila, however, clearly indicated that the purpose of the statement was to enable the government "to adequately evaluate whether or not entering into any agreement is in its best interest." This letter could not have misled Davila into believing that the government would make a motion to depart if he made the statement.

Additionally, this is not a case where "reasonable minds could not differ about the substantiality and value of the assistance." *See Kelley*, 956 F.2d at 755. Davila's only assistance was an "off-the-record" statement naming the persons he knew were engaged in criminal conduct.[6] Davila did not participate in any ongoing investigation or prosecution of another individual. Although it is undisputed that Davila wanted to cooperate further with the authorities, a desire to cooperate is not the same as substantial assistance. In fact, in 1989, the guideline authorizing departure for substantial assistance was amended to delete language indicating that a "good faith effort to provide substantial assistance" could be sufficient for departure. U.S.S.G.App. C, amend. 290 (1990). Given these facts, Davila cannot establish that the court had authority to depart. *See Smitherman*, 889 F.2d at 190–91 (finding no authority to depart even though defendant provided the government with information on illegal activities).

### III.

In conclusion, we find that all of Davila's claims are without merit, and affirm his convictions and sentence.

---

**6.** The government did not even fully record Davila's statement because its recorder malfunc-tioned.