50 F.3d 9
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Ray SHIFFLETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest Elwood SHIFFLETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wendy Shifflett MCALLISTER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Dale RALSTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Millard SHIFFLETT, Claimant-Appellant,
and
Michael Ray SHIFFLETT, Defendant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Ray SHIFFLETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Ray SHIFFLETT, Defendant-Appellant.
 Nos. 93-5693, 93-5721, 93-5742, 93-5787, 94-1417, 94-5069, 94-5287.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 8, 1994.
Decided: March 23, 1995.
 
 Appeals from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CR-91-33)
 W.D.Va.
 AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.
 ARGUED: Marvin David Miller, Alexandria, VA; Edward Leigh Hogshire, Buck, Hogshire & Tereskerz, Lld., Charlottesville, VA; James P. Cox, III, Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., Charlottesville, VA, for Appellants. Thomas Ernest Booth, United States Department of Justice, Washington, DC, for Appellee. ON BRIEF: Frank A. Mika, Waynesboro, VA, for Appellant Michael Shifflett; Shanon S. Echols, Charlottesville, VA, for Appellant Ernest Shifflett; Denise Y. Lunsford, Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., Charlottesville, VA, for Appellant Ralston. Robert P. Crouch, Jr., United States Attorney, Jennie L.M. Waering, Assistant United States Attorney, Kenneth M. Sorenson, Assistant United States Attorney, United States Department of Justice, Washington, DC, for Appellee.
 Before MURNAGHAN and MICHAEL, Circuit Judges, and CURRIE, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 When one member of a family involves himself or herself in drug dealing, he or she often involves other family members as well. Michael Shifflett became a marijuana and cocaine dealer. His father, Ernest Shifflett, his sister, Wendy Shifflett McAllister, as well as his uncle, Donald Shifflett, are all here as appellants in a drug case involving numerous counts.[1] One of Michael's associates, William Dale Ralston, is also an appellant here. Finding merit to several of appellants' claims, but no merit to others, we affirm in part, reverse in part, and remand in part.
 
 
 2
 Following a jury trial in the United States District Court for the Western District of Virginia, Michael Shifflett was convicted of conspiracy to distribute marijuana and cocaine, in violation of 21 U.S.C. Sec. 846; engaging in a continuing criminal enterprise, in violation of 21 U.S.C. Sec. 848; possession with intent to distribute marijuana, and possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(b)(1); two counts of money laundering, in violation of 18 U.S.C. Sec. 1956(a)(1); and conspiracy to obstruct justice, in violation of 18 U.S.C. Sec. 371. Michael was acquitted of Counts 6 and 7 of the indictment, both for money laundering. He was sentenced to a total of 300 months of imprisonment and five years of supervised release. The district court included in this total a 60 month concurrent sentence for Count 6.
 
 
 3
 Wendy Shifflett McAllister was convicted of conspiracy to obstruct justice, in violation of 18 U.S.C. Sec. 371, and making a false statement to government agents, in violation of 18 U.S.C. Sec. 1001. She was sentenced to 24 months of imprisonment and three years of supervised release.
 
 
 4
 Ernest Shifflett was convicted of conspiracy to obstruct justice, in violation of 18 U.S.C. Sec. 371, and obstruction of justice, in violation of 18 U.S.C. Sec. 1503. He was sentenced to 27 months of imprisonment, and two years of supervised release.
 
 
 5
 William Dale Ralston was convicted of drug distribution conspiracy, in violation of 21 U.S.C. Sec. 846. He was sentenced to 30 months of imprisonment, and three years of supervised release.
 
 
 6
 Donald Shifflett was acquitted of all substantive charges, but challenges on appeal the forfeiture of a pick-up truck to which he claims ownership rights. Under Count 14 of the indictment, the jury found that two parcels of property, two tractors, and the pick-up truck were either used to facilitate Michael Shifflett's narcotics crimes or were derived from proceeds of those crimes. The district court, without performing a proportionality review, ordered criminal forfeiture of these parcels and vehicles.
 
 
 7
 There are certain items which have been appealed which require attention at the outset. It was error, as the government has acknowledged, for the district court to sentence Michael under Count 6 for which he was acquitted. We thus reverse the entry of conviction and sentence that Michael received for this count.
 
 
 8
 We also must reverse Michael's conviction under Count 2 for running a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848 (the "CCE" statute). Viewing the evidence in the light most favorable to the government, and taking all reasonable inferences therefrom, see Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Guinta, 925 F.2d 758, 764 (4th Cir.1991), the evidence did not prove beyond a reasonable doubt that Michael organized, supervised, or managed five or more people as is required for a conviction under 21 U.S.C. Sec. 848.
 
 
 9
 This Circuit has held that the terms "organize," "supervise," and "manage," as used in the CCE statute, should be applied "in their ordinary sense as understood by the public or the business community." United States v. Butler, 885 F.2d 195, 200 (4th Cir.1989). We have thus held that the mere showing of a buyer-seller relationship, including the "fronting" of drugs, i.e., selling drugs on credit, does not alone establish organization, supervision, or management for purposes of the CCE statute. Butler, 885 F.2d at 201 (citing United States v. Apodaca, 843 F.2d 421, 426 (10th Cir.), cert. denied, 488 U.S. 932 (1988), and United States v. Possick, 849 F.2d 332 (8th Cir.1988)). In the instant case, the district court did not instruct the jury that proof of a mere buyer-seller relationship is insufficient to show supervision, management, or control, and a review of the record indicates that of the seven persons the government attempted to prove Michael to have organized, supervised, or managed, four were involved only in an ordinary buyer-seller relationship with Michael.
 
 
 10
 Viewed in the light most favorable to the government, the evidence at trial established that Michael sold and "fronted" drugs to at least seven people, many of whom resold the drugs. Of these seven people, Michael controlled two, Raymond Sipe and Jean Morris, as both of them acted as couriers under Michael's direction. Michael also may have "organized" Wilson Steppe, as Michael loaned Steppe money in order to post bond for one of Steppe's customers, and thus Michael organized Steppe in such a way as ultimately to maintain a customer base for Michael's narcotics. The remaining four people purchased drugs from Michael, sometimes on credit, at the prices Michael demanded. Michael told them how to contact him and gave one of them the name of a potential customer. Michael acted toward these four, in ordinary business terms, as a wholesaler acts toward retailers. And just as a wholesaler who sells at prices he or she sets, on credit or for cash, does not "organize, supervise, or manage" retailers, Michael did not organize, supervise, or manage these four. Thus, Michael was shown to have controlled or organized only three people, and as three are too few to establish guilt of a continuing criminal violation under the CCE statute, we reverse Michael's conviction and sentence under this count.
 
 
 11
 Furthermore, we must reverse and remand the district court's order of forfeiture of several parcels of land and vehicles under Count 14 of the indictment because the district court did not perform a proportionality or "instrumentality" review, despite Michael's request at sentencing that such a review be performed. The Supreme Court in Austin v. United States, 113 S.Ct. 2801, 2812 (1993), and Alexander v. United States, 113 S.Ct. 2766, 2775-76 (1993), announced that a forfeiture which is not proportional to the crime of conviction violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. Our Circuit has held that this rule applies to forfeitures of property which constitutes the proceeds of crime, as well as forfeitures of property which has been used to facilitate a crime. United States v. Borromeo, 1 F.3d 219, 221 (4th Cir.1993).[2] In light of the complexity of the present case, we find it would be most appropriate for the district court, with its close familiarity with the facts, to conduct such a review here. Compare Borromeo, 1 F.3d at 221 (remanding for proportionality review), with United States v. Chandler, 36 F.3d 358, 366 (4th Cir.1994) (where the court of appeals itself performed a review), petition for cert. filed (U.S. Dec. 27, 1994). Consequently, we vacate and remand so that such a review may be performed by the district court before entry of a constitutional forfeiture order.
 
 
 12
 Otherwise, there is a plethora of points raised on appeal, none of which we find to have merit:
 
 
 13
 1. The district court's denial of Donald's motion, under 21 U.S.C. Sec. 853(n)(6), to amend its order forfeiting the pick-up truck, was not clearly erroneous. A forfeiture order will be amended under 21 U.S.C. Sec. 853(n)(6) (part of the CCE statute forfeiture provisions) only if the petitioner shows by a preponderance that his or her right to the property was "vested" or "superior to" the right of the criminal defendant at the time of the acts giving rise to forfeiture. A right which is known to the third party to be a sham or fraudulent is not a vested right for purposes of defeating forfeiture under the Racketeering Influenced and Corrupt Organizations (RICO) forfeiture provisions, S.Rep. No. 225, 98th Cong., 2d Sess. 209 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3392 n. 47. Because Congress intended for the courts to rely on RICO forfeiture provisions when interpreting the identical language of CCE forfeiture provisions, see S.Rep. No. 225 at 211-12, reprinted in 1984 U.S.C.C.A.N. at 3394-95 (in discussion of CCE criminal forfeiture statutory provisions, referring reader to discussions of RICO statutory provisions where the CCE and RICO provisions are identical), the same rule applies to criminal forfeiture under the CCE statute forfeiture provisions.
 
 
 14
 In forfeiture proceedings, findings of fact by a district court are reviewed only for clear error. See United States v. $10,694.00 U.S. Currency, 828 F.2d 233, 235 (4th Cir.1987) (applying clear error standard). In the instant case, the district court found as a matter of fact that Donald's title to the truck was a sham, and that Michael was the de facto owner of the truck because Michael paid for the truck and controlled it. This finding was not clearly erroneous in light of evidence that although Donald held title to the truck, Michael kept the truck at his home, was the sole operator of the truck, and customized the truck himself. Because Donald's right was a sham, Donald's interest in the truck was neither "vested" nor "superior to" Michael's right for purposes of defeating forfeiture, and Donald has shown no basis for amending the district court's forfeiture order. Forfeiture by Michael we have dealt with above.
 
 
 15
 2. Each element of a crime, including membership in a conspiracy, must be found beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970); United States v. Rieves, 15 F.3d 42, 43-44 (4th Cir.), cert. denied, 114 S.Ct. 2679 (1994). Thus the district court's statement to the jury that only slight evidence was required to connect a particular defendant with a conspiracy, was erroneous. However, in light of the fact that the district court told the jury perhaps a dozen or more times that the elements of the crimes must be proven beyond a reasonable doubt, and only once placed the erroneous "slight evidence" standard before the jury, the error was harmless. As the jury acquitted several codefendants of conspiracy counts even though those codefendants were connected to the conspiracy by "slight evidence," it is clear that the jury applied the beyond a reasonable doubt standard and not the "slight evidence" standard, and therefore "the guilty verdict[s] actually rendered in this trial [were] surely unattributable to the error." Sullivan v. Louisiana, 113 S.Ct. 2078, 2081 (1993) (defining "harmless error" in constitutional error context).[3]
 
 
 16
 3. Contrary to appellants' contention, our review of the record reveals that the district judge instructed the jury on multiple conspiracies. The judge made clear that a defendant must be acquitted if not a member of the charged conspiracy, even if he or she belonged to another existing uncharged conspiracy. We have approved of the use of such an instruction before, see United States v. Camps, 32 F.3d 102, 104 (4th Cir.1994), petition for cert. filed (U.S. Nov. 8, 1994), and find no error in its use here.
 
 
 17
 4. We find no error in the district court's manner of informing trial counsel, prior to closing argument, of the jury instructions which would be given. Although the district court did not provide counsel a script of what it intended to say to the jury, provision of such a script is not required. The district court discussed all proposed instructions and its own additional instructions, including the fact that it would be giving a multiple conspiracy instruction. The purpose of Federal Rule of Criminal Procedure 30, " 'to require the district court to inform the trial lawyers in a fair way what the instructions are going to be in order to allow counsel the opportunity to argue the case intelligently to the jury,' " United States v. Horton, 921 F.2d 540, 547 (4th Cir.1990) (quoting United States v. Gaskins, 849 F.2d 454, 458 (9th Cir.1988)), cert. denied, 501 U.S. 1234 (1991), was met. The court also literally complied with Rule 30, as the court "inform[ed] counsel of its proposed action upon the requests[for particular jury instructions] prior to their arguments to the jury." F.R.Crim.P. 30.
 
 
 18
 Moreover, appellants have pointed to no specific argument which they did not make in their closing argument and which they would have made had the district court given them some unspecified additional information about the jury instructions prior to closing argument, and thus appellants have shown no prejudice. Because appellants have shown no prejudice, we find no grounds for reversal. See Horton, 921 F.2d at 547 (holding Rule 30 error reversible only if actual prejudice is shown); United States v. Burgess, 691 F.2d 1146, 1156 (4th Cir.1982) (same).
 
 
 19
 5. The use of special verdict forms requiring the jury to state whether each defendant's involvement in the drug conspiracy, if any, involved only cocaine, only marijuana, or both, was not erroneous whether or not the verdict forms had been requested by any of the defendants. Likewise, the use of special verdict forms for the obstruction of justice and false statements conspiracy was not in error. Whether or not the defendants requested the verdict forms is not controlling because, as a rule, special verdict forms may be used in conspiracy cases with multiple objectives. United States v. Davila, 964 F.2d 778, 783 (8th Cir.), cert. denied, 113 S.Ct. 438 (1992); United States v. Todd, 920 F.2d 399, 407 (6th Cir.1990).
 
 
 20
 Similarly, it was not erroneous for the district court to convict the defendants by use of the verdicts rendered by the jury on the special verdict forms. See Davila, 964 F.2d at 783; Todd, 920 F.2d at 407. The special verdicts are simply an aid to the district court in sentencing. See Todd, 920 F.2d at 407 (special verdict forms necessary to discover sentencing range for each defendant in multiple objectives conspiracy case). Properly, the district court only sentenced each defendant for the activity which was within the scope of his or her conspiratorial agreement. See United States v. Irvin, 2 F.3d 72, 75 (4th Cir.1993), cert. denied, 114 S.Ct. 1086 (1994). Activity within the scope of agreement was evidenced by the special verdicts rendered by the jury specifying not only whether each defendant was guilty of the conspiracy charged, but also which objectives of each conspiracy each defendant was involved in. Thus, entry of guilty convictions on the verdicts rendered by the jury was not in error.
 
 
 21
 6. Viewing the evidence in the light most favorable to the government, and taking all reasonable inferences therefrom, see Jackson, 443 U.S. at 319; Guinta, 925 F.2d at 764, we find that the evidence was sufficient to support the jury's guilty verdict as to Michael having been a member of the conspiracy to obstruct justice. Although the evidence of this conspiracy consisted primarily of overt acts by Wendy and Ernest to mislead law enforcement officers and the grand jury by false statements, knowledge of the conspiracy and voluntary membership in the conspiracy by Michael was thereby circumstantially shown: for Wendy and Ernest to have known what false statements to make to law enforcement in order to hide Michael's assets, Michael must have communicated to Wendy and Ernest information about how he had hidden his assets. As a defendant's participation in a conspiracy may be shown by circumstantial evidence indicating that he or she agreed with one or more others to commit a crime and only one overt act need be shown in furtherance of the agreement, see United States v. Kennedy, 32 F.3d 876, 886 (4th Cir.1994), cert. denied, 63 U.S.L.W. 3563 (U.S.1995); United States v. Chambers, 985 F.2d 1263, 1270 (4th Cir.), cert. denied, 114 S.Ct. 107 (1993), we affirm Michael's conviction of conspiracy to obstruct justice.
 
 
 22
 7. The admission of hearsay statements against Wendy, when she does not appear, even by a preponderance of the evidence, to have been part of the conspiracy of which the statements were in furtherance (the drug conspiracy), may have been in error, see F.R.E. 802 (hearsay generally inadmissible); cf. F.R.E. 801(d)(2)(E) (hearsay statement of coconspirator admissible when statement is during and in furtherance of the conspiracy), but their admission was harmless. The statements were made by Michael to his drug coconspirators, to the effect that Michael had the title to his house transferred to Wendy's name and he had given her $500 for it. Admission of this evidence was harmless beyond a reasonable doubt in light of the fact that overwhelming evidence supported the jury's verdict of obstruction of justice. Wendy was shown to have told law enforcement that she lent Michael $40,000, yet her income was shown to have been only $120.00 per week, at most, for her entire eight-year working life. The jury's conclusion that Wendy must have been lying to law enforcement about the loan is the rational conclusion anyone would reach from this evidence, as it is impossible to save $40,000 on such a small salary and simultaneously to pay any living expenses. We therefore find that the admission of Michael's statement, if erroneous, was harmless, and therefore cannot serve as a basis for overturning Wendy's conviction for conspiracy to obstruct justice. See F.R.Crim.P. 52(a) (to require reversal, admission of the evidence must have substantially prejudiced defendant's rights).
 
 
 23
 8. The evidence that Wendy had stated to public assistance personnel that she had no money was admitted not as character evidence, but to impeach her sister's statement that Wendy had saved money all of her life and that therefore it was possible that Wendy had accumulated the $40,000 which Wendy told law enforcement officers she had given to Michael. When a witness testifies to a fact as Wendy's sister did here, the opposing party may impeach the witness with evidence that contradicts that fact. See, e.g., United States v. Lopez, 979 F.2d 1024, 1034-35 (5th Cir.1992), cert. denied, 113 S.Ct. 2349 (1993). The evidence that Wendy's sister believed Wendy to be honest, despite Wendy's contradictory statements to law enforcement and welfare authorities regarding her finances, was admitted not to show Wendy's character, but to impeach Wendy's sister by showing bias. Evidence of bias on the part of a witness is almost always relevant and, absent undue prejudice, admissible. See United States v. Abel, 469 U.S. 45, 52 (1984).
 
 
 24
 It is irrelevant that the evidence above would not have been admissible to show Wendy's character under Rule 404 of the Federal Rules of Evidence; evidence admitted to impeach is not being used to show conduct in conformity with character. See F.R.E. 404 ("Evidence of a person's character ... [generally] is not admissible for the purpose of proving action in conformity therewith on a particular occasion...."); United States v. Perez-Garcia, 904 F.2d 1534, 1545 (11th Cir.1990) (evidence admitted to impeach need not satisfy exceptions to general rule that character evidence is inadmissible).
 
 
 25
 9. Viewing the evidence in the light most favorable to the government, and taking all reasonable inferences therefrom, see Jackson, 443 U.S. at 319; Guinta, 925 F.2d at 764, we find that the evidence was sufficient to support the jury's guilty verdict as to Wendy having been a member of the conspiracy to obstruct justice. There was proof of false statements by Wendy to law enforcement which had the effect of hiding Michael's wealth. As a defendant's participation in a conspiracy may be shown by circumstantial evidence indicating that he or she agreed with one or more others to commit a crime and only one overt act need be shown in furtherance of the agreement, see Kennedy, 32 F.3d at 886; Chambers, 985 F.2d at 1270, we affirm Wendy's conviction.
 
 
 26
 10. We find no abuse of discretion in the district court's denial of Ernest's motion to sever his trial from the trial of his codefendants. A coconspirator is only entitled to a severance if he or she has shown prejudice, see Zafiro v. United States, 113 S.Ct. 933, 937-38 (1993); F.R.Crim.P. 14, and Ernest has shown no prejudice here. Although Ernest claims that he was prejudiced because the jury may have convicted him for his association with the members of the drug conspiracy, when he was only charged as a member of the conspiracy to obstruct justice, the fact that the jury acquitted Donald makes clear that the jury evaluated the evidence against each codefendant separately. United States v. Riley, 991 F.2d 120, 125 (4th Cir.), cert. denied, 114 S.Ct. 392 (1993). Because the joinder of Ernest's trial with that of the others did not "compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," Zafiro, 113 S.Ct. at 938, the district court did not err.
 
 
 27
 11. We find no reversible error in the district court's limits on voir dire. The Sixth Amendment right to an impartial jury extends only to the members of the venire who actually sat as jurors, not to members who were excused for cause or by peremptory challenge. See Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988). Appellants only dispute on appeal their inability to examine members of the venire who never sat on the jury.
 
 
 28
 12. We find no abuse of discretion in the district court's admission of cocaine as physical evidence, despite the fact that the cocaine had not been made available earlier to the defense, and despite the fact that no witness could testify whether it was powder cocaine or base cocaine ("crack"). Rule 16 of the Federal Rules of Criminal Procedure permits defendants to inspect tangible evidence in the government's "possession, custody, or control." F.R.Crim.P. 16(a)(1)(C). The cocaine was in the possession and custody of the state, not of the federal government. Even if the federal government could be found to have had some "control" over the evidence, the defendants who objected to not having an opportunity to inspect the cocaine were given a lab report concerning it. Consequently, there was no prejudice, and any failure to permit inspection was harmless error. See United States v. Tibesar, 894 F.2d 317, 319 (8th Cir.), cert. denied, 498 U.S. 825 (1990) (holding that when there is no showing of prejudice, there is no abuse of discretion in refusing to exclude a previously undiscovered piece of evidence). Whether the cocaine was in powder or crack form was irrelevant. The conviction stands in either case, as conspiracy to distribute and possession with intent to distribute cocaine in some form were proven beyond a reasonable doubt. Sentencing proceeded on the assumption that powder cocaine and not crack cocaine was proven. The powder cocaine obviously resulted in a lesser sentence than the one which crack cocaine would have produced. See U.S.S.G. Sec. 2D1.1(c) (Drug Quantity Table).
 
 
 29
 13. The district court acted well within its discretion in permitting a prosecution witness to refresh his recollection using the prosecutor's notes from her prior conversation with the witness. Under the Federal Rules of Evidence, a recollection may be refreshed by anything, including a prosecutor's notes. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Sec. 612-15 (1994); Thompson v. United States, 342 F.2d 137, 140 (5th Cir.), cert. denied, 381 U.S. 926 (1965) ("The fact that a government agent instead of the witness prepared the statement [used to refresh recollection] is inconsequential."). The district court was likewise well within its discretion in admitting, on defense motion, the prosecutor's notes; the admission was clearly harmless to the defense because the contents of the notes were identical to the witness' testimony, thereby potentially damaging to the prosecution's case by implying that the witness merely read the notes and did not, in testifying, have a true recollection of what took place.
 
 
 30
 14. Admission of hearsay in a law enforcement report (a "DEA-6") which implied that Michael sold cocaine to one particular individual was harmless error, being merely cumulative of the fact established by voluminous other evidence of sales of cocaine from Michael to the same purchaser. See F.R.Crim.P. 52(a) (to require reversal, admission of the evidence must have substantially prejudiced defendant's rights).
 
 
 31
 15. We find no abuse of discretion in the district court's admission of charts summarizing evidence presented to the jury by an Internal Revenue Service tax expert, even though the charts contained some suppositions by the expert as to how Michael spent his drug profits. Charts summarizing evidence presented at trial may be admitted "if they are based upon and fairly represent competent evidence already before the jury." United States v. Porter, 821 F.2d 968, 975 (4th Cir.1987), cert. denied, 485 U.S. 934 (1988). The charts here fairly represented the expert's testimony, which was itself competent evidence. Questions about the weight of the evidence may be addressed by cross-examination and rebuttal evidence, but do not go to the chart's admissibility. Porter, 821 F.2d at 974-75. The expert witness was subject to cross-examination regarding the charts, and the district court instructed the jury that it was not required to find as true any of the figures on the charts. Thus the jury was free to accept or reject any suppositions by the expert contained in the charts, and admission of the charts was proper.
 
 
 32
 16. We find no reversible error in the district court's failure to require the government to give to the defense criminal records of prosecution witnesses William Ryan and James Wells until after the commencement of trial. Although information about prior convictions can be discovered prior to trial as Brady material, see United States v. Bagley, 473 U.S. 667, 676 (1985) ("Impeachment evidence ... falls within the Brady rule."), the lack of pre-trial discovery was harmless here, where sufficient evidence was placed before the jury as to the criminal histories of the witnesses involved (Ryan admitted his prior convictions on direct examination and evidence was placed before the jury that Wells had cooperated with law enforcement on prior occasions in order to receive leniency for prior crimes). Moreover, the particular convictions in which the defendants have claimed they were interested were all more than ten years old and thus too remote to be admissible, absent great probative value which has not been shown. See F.R.E. 609(b) (evidence of witness' conviction and sentence over ten years old not admissible unless probative value substantially outweighs prejudicial effect).
 
 
 33
 17. From the record before us, it is unclear whether the district court admitted testimony that one of the witnesses for the prosecution, Wells, told his uncle that he (Wells) would "say anything" against defendant Michael at trial. However, whether or not this statement was introduced at trial is irrelevant; the error, if any, was harmless beyond a reasonable doubt. Other evidence was presented regarding Well's veracity, including his prior record, his prior cooperation with law enforcement, and his immunity agreement with the government in this case, so that the jury had a sufficiently complete picture of Wells to make a credibility determination. Any more impeachment evidence would have been merely cumulative, and therefore its exclusion was harmless. See F.R.Crim.P. 52(a) (harmless error rule).
 
 
 34
 18. The refusal of the district court to admit expert testimony on the exact amount of reductions in sentences that government witnesses could receive in exchange for testifying was not an abuse of discretion. We have held before that where the jury is given information about the charges faced by a government witness in the cooperation agreement between the witness and the government, the district court does not abuse its discretion in refusing to admit evidence of a potential life sentence. United States v. Tindle, 808 F.2d 319, 328 (4th Cir.1986). This is because the district court has discretion to limit "potentially expansive, time-consuming cross-examination." Tindle, 808 F.2d at 328. The natural extension of our rule in Tindle is that when the actual agreement between the government and the cooperating witness is before the jury, the district court may admit or exclude, within its discretion, expert testimony regarding potential sentences and reductions in sentences. Often the better course will be, as here, to exclude the testimony, as a battle of defense and prosecution experts on an impeachment issue such as sentence reductions may needlessly consume time and divert the jury from the primary issues in the case, such that the probative value of the evidence of bias is substantially outweighed by its potential to confuse the jury and waste trial time. See F.R.E. 403; United States v. Jarabek, 726 F.2d 889, 902 (1st Cir.1984) ("The very slight probative value of such evidence on the issue of bias does not overcome the strong likelihood of confusion on the central issues in the case and undue delay in the trial.").
 
 
 35
 19. Nor was it an abuse of discretion to exclude evidence regarding the indirect financial incentives of law enforcement agencies to obtain convictions and concomitant forfeitures. The defendants proffered no evidence to show that the officer testifying in the instant case stood directly to benefit from the forfeitures, and thus the officer's interest in this case is far from the type of "direct, personal, substantial, pecuniary interest in reaching a conclusion against [a defendant]" which the Supreme Court has held may violate due process of law when such an interest is held by a judge, Tumey v. Ohio, 273 U.S. 510, 523 (1927). Nevertheless, there is an arguable slight benefit to officers from the use of forfeitures in funding law enforcement. See United States v. James Daniel Good Real Property, 114 S.Ct. 492, 502 n. 2 (1993). However, it was not an abuse of discretion to exclude this evidence, since the probative value of the evidence to impeach the credibility of the witness was substantially outweighed by the danger that a battle of the experts on the extent of law enforcement funding obtained from forfeitures would confuse the issues in the case, mislead the jury, and unduly waste trial time. F.R.E. 403; see also United States v. Stackpole, 811 F.2d 689, 694 (1st Cir.1987) (finding no abuse of discretion in excluding evidence of funding levels of Bureau of Alcohol, Tobacco, and Firearms where evidence would allegedly show that agents were under pressure to "frame" the defendant).
 
 
 36
 20. Finally, it was not erroneous for the district court to wait to enter a final order of forfeiture until after all third parties were given the opportunity to come forward with any claims on the property. See 21 U.S.C. Sec. 853(n).
 
 
 37
 Accordingly, Michael's convictions under Count 2 (the continuing criminal enterprise) and under Count 6 (for which the jury acquitted) are reversed, and Michael's case is remanded for resentencing in light of these reversals. Count 14 (forfeiture) is remanded for proportionality review by the district court before entry of an appropriate forfeiture order. All other counts are affirmed.
 
 
 38
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART
 
 
 
 [1]
 Michael's mother, Margaret Shifflett, was also charged, but her trial was severed from the trial of the appellants here
 
 
 [2]
 It is of course a well established rule that a subsequent panel is not free to overrule a prior panel. See, e.g., North Carolina Utilities Comm'n v. F.C.C., 552 F.2d 1036, 1044 n. 8 (4th Cir.), cert. denied, 434 U.S. 874 (1977). It is possible that the recent opinion of United States v. Wild, 93-5630(L) (4th Cir.1995) might amount to an attempt to overrule the opinion of United States v. Borromeo, 1 F.3d 219 (4th Cir.1993). See Wild, slip op. at n. 11; id., slip op. at 15-16. However, examination of Wild indicates that the discussion in Wild of forfeitures of property constituting proceeds of criminal activity (i.e., property covered by 21 U.S.C. Sec. 853(a)(1)) is mere dicta, since that case concerned only property facilitating criminal activity (i.e., property covered by 21 U.S.C. Sec. 853(a)(2)). We must follow the holding of Borromeo. See, e.g., Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 849 (1974) (dicta of prior panel need not be followed by subsequent panel)
 Of course, the distinction may be of no moment to the instant case, as it may well be that the property found forfeitable by the jury here was property used to facilitate criminal activity rather than property constituting the proceeds of criminal activity; so it appears from the cold record that may be the case, at least as to the pick-up truck, in light of the fact that the jury did not find a Jaguar car forfeitable, when that car apparently was not used to facilitate criminal activity yet was purchased in the same manner as the pick-up truck that the jury did find to be forfeitable. As to the parcels of land and the tractors, however, we have no indication of whether the jury found those items forfeitable as proceeds or as facilitating instrumentalities. The jury returned only a general verdict, finding those items forfeitable as either proceeds or instrumentalities, under 21 U.S.C. Sec. 853. On remand in the course of a thorough proportionality review, of course, the district court will make factual findings about the property. If some of the property is found to have been forfeited as proceeds, and our court is asked again to examine the issue, we will have the distinction between Borromeo and Wild squarely before us as a live issue, and will have the opportunity to decide whether Borromeo remains the law of this Circuit. Until that time, the issue is not ripe before us.
 If we should wish some day to overrule Borromeo and decide that proportionality review is never required for forfeitures of proceeds, then the issue facing us here will not arise; all district courts in the Fourth Circuit will certainly use special verdict forms so that the basis for a jury decision to forfeit property will be clear, and whether or not proportionality review is required by the district court will be decided.
 
 
 [3]
 For the same reason, the error was not plain. To find plain error, we must find actual prejudice to substantial rights. United States v. Olano, 113 S.Ct. 1770, 1776 (1993). Because it is clear that the jury used the beyond a reasonable doubt standard and not the slight evidence standard, actual prejudice has not been shown. Because the appellants did not object at trial to this instruction, our review is limited to plain error. See United States v. Brasseaux, 509 F.2d 157, 161-62 (5th Cir.1975) (upholding verdict despite slight evidence instruction where beyond a reasonable doubt instruction was given several times and instructions were not objected to at trial, because error was not plain)