Filed: November 4, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

Nos. 95-5266(L)
(CR-94-106)

———————————

United States of America,

Plaintiff - Appellee,

versus

Jermaine Lavonne Chase, et al,

Defendants - Appellants.

———————————

O R D E R

———————————

The Court amends its opinion filed October 23, 1997, as follows:

On the cover sheet, section 2 -- the case number for the first appeal is corrected to read "No. 95-5266."

For the Court - By Direction

/s/ Patricia S. Connor

———————————
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5266

JERMAINE LAVONNE CHASE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5290

PATRICK EARL FRANCIS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5369

CARROLL EUGENE DODSON,
Defendant-Appellant.

Appeals from the United States District Court

for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CR-94-106)

Argued: April 11, 1997

Decided: October 23, 1997

Before RUSSELL and WIDENER, Circuit Judges, and DUFFY, United States District Judge for the District of South Carolina, sitting by designation.

_____

Affirmed in part, reversed in part, vacated in part, and remanded by unpublished opinion. Judge Duffy wrote the opinion, in which Judge Russell and Judge Widener joined.

_____

**COUNSEL**

**ARGUED:** Robert Paul Dwoskin, Charlottesville, Virginia; J. Lloyd Snook, III, SNOOK & HAUGHEY, P.C., Charlottesville, Virginia, for Appellants. Ray B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Frederick T. Lieblich, PARKER, MCELWAIN & JACOBS, Charlottesville, Virginia, for Appellant Francis. Robert P. Crouch, Jr., United States Attorney, George E. Buzzy, Special Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

DUFFY, District Judge:

Jermaine Lavonne Chase ("Chase"), Patrick Earl Francis ("Francis"), and Carroll Eugene Dodson ("Dodson") were convicted of various drug trafficking and firearms offenses in the Western District of Virginia. Chase, Francis, and Dodson raise several issues on appeal. We affirm in part, reverse in part, vacate in part, and remand in part.

I.

A.

Viewing the evidence in the light most favorable to the government, United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993), the evidence establishes the following. Chase, Francis, and Dodson were part of a crack cocaine distribution operation from sometime before April 1990, through September 23, 1994, along with twenty-four other indicted co-conspirators. The crack was sold from two locations: a house near Danville, Virginia, called "the Fortress" or "the Shack" and another house in Danville, referred to as the "the Farm."

On January 8, 1993, the Danville Police executed a search warrant at the Fortress. A team of approximately twelve law enforcement officers took three to five minutes to enter the building during which time the officers heard the occupants moving around inside. Upon entering the building, the officers found the individuals sitting quietly in the front room. Shortly thereafter, the officers discovered burnt cocaine in a woodstove and two handguns hidden in a bedroom wall.

B.

Additionally, a search by the law enforcement officers of Chase's house gives rise to issues on appeal. On August 30, 1994, Chase was arrested at about 8:00 A.M. as he stepped outside of his house. The officers entered the house when they heard people moving around inside after Chase had told them that there were no others present.[1] A handgun and a bag of marijuana were observed in the house upon entry. Subsequently, the police obtained a search warrant. Upon searching the residence, the police seized the firearm and discovered about six ounces of cocaine which was also seized.

_____

[1] Although the evidence is in conflict on this point, the district court appears to have resolved the factual disputes in favor of the police officers and will be reversed only if those findings are clearly erroneous. United States v. Jones, 913 F.2d 174, 176 (4th Cir. 1990), cert. denied, 498 U.S. 1052 (1991). We do not find these determinations by the district court to have been clearly erroneous.

II.

Chase contends that the search of his house was violative of the Fourth Amendment because his arrest took place outside of the house. The government asserts that the initial entry into the house was justi-fied because the officers heard people inside the house after Chase had told them that there were no others present.

Police officers may conduct a protective sweep of a location as a precautionary matter without probable cause or reasonable suspicion. Maryland v. Buie, 494 U.S. 325, 334 (1990). An arresting officer is free to search areas "immediately adjoining the place of arrest from which an attack could be immediately launched." Id. "[I]f the search-ing officer possesse[d] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing that the area swept harbored an individual posing a danger to the officers or others," the search is not violative of the Fourth Amendment. Id., 494 U.S. at 327 (citations omitted). In the present case, the arresting officers heard people inside the house after Chase told them that there were none. Thus, we find that it was reasonable for the officers to believe that the area posed a potential danger.

III.

A.

Dodson challenges the sufficiency of the evidence concerning his conviction for engaging in a continuing criminal enterprise ("CCE"). A challenge to the sufficiency of the evidence is reviewed as to whether there is substantial evidence from which the jury could find the defendant guilty beyond a reasonable doubt. United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983), cert. denied, 465 U.S. 1028 (1984).

The government is required to prove five elements to support a CCE conviction: (1) the defendant committed a felony violation of the federal drug laws; (2) the violation was part of a continuing series of violations of the drug laws; (3) the series of violations was undertaken

4

by the defendant in concert with five or more persons; (4) the defendant served in an organizational, supervisory, or management capacity with respect to these other persons; and (5) the defendant derived substantial income or resources from the series of violations. United States v. Ricks, 882 F.2d 885, 890 (4th Cir. 1989), cert. denied, 493 U.S. 1047 (1990). Dodson argues that there was no evidence that he served as an organizer, supervisor, or manager of more than five individuals. Numerous witnesses, however, testified at trial that Dodson was responsible for leading, organizing and managing the cocaine conspiracy. The evidence need not show that Dodson directly supervised five individuals contemporaneously or that the five individuals were collectively engaged in any specific offense, only that Dodson occupied a management position in the enterprise. Id. at 891; see also United States v. Heater, 63 F.3d 311, 317 (4th Cir. 1995), cert. denied, 116 S. Ct. 796 (1996) (It is not required that the government show that the defendant had personal contact with five people because organizational authority is delegable.). Therefore, we find substantial evidence to support Dodson's CCE conviction.

B.

Dodson additionally contests an alleged sentence enhancement for possession of a firearm. However, the district court expressly considered and declined any such enhancement. J.A. at 1631.

IV.

Francis challenges the sufficiency of the evidence as to his drug conspiracy conviction and his conviction for aiding and abetting the distribution of cocaine.**2**

A.

In order to prove conspiracy to possess cocaine with the intent to distribute, the government must establish (1) an agreement to possess

_____

**2** As stated above, in assessing the sufficiency of the evidence, we are to determine whether there is substantial evidence from which the jury could find the defendant guilty beyond a reasonable doubt. Arrington, 719 F.2d at 704.

5

cocaine with the intent to distribute between two or more persons; (2) that the defendant knew of the conspiracy; and (3) that the defendant knowingly and voluntarily became part of the conspiracy. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996), cert. denied, 117 S. Ct. 1087 (1997). Essentially, Francis asserts that the testimony about his participation was not credible. However, after a jury has returned a verdict of guilty, this court is not to weigh evidence nor review the credibility of witnesses. Arrington, 719 F.2d at 704. Upon reviewing the record, we find that substantial evidence exists to support the jury's verdict, including testimony that Francis was in fact one of the organizational leaders of the conspiracy.

B.

As to Francis' conviction for aiding and abetting the distribution of cocaine, the jury could easily have found that all persons within the Fortress that evening were actively and knowingly engaged in possessing cocaine with the intent to distribute, thus aiding and abetting such distributions. The jury heard significant testimony concerning how the Fortress had been modified and equipped for the purpose of crack distribution as well as testimony about drug transactions which took place there. Accordingly, we find that the jury's verdict that Francis was guilty of aiding and abetting the distribution of cocaine should be upheld.

C.

Francis also asserts that the district court did not resolve all factual disputes and objections regarding the presentence report raised in documents filed the day before he was sentenced. We review factual determinations relating to sentencing for clear error. United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996).

Francis contests the weight of the drugs; however, the record shows that the district court considered extensive evidence concerning the factual basis supporting the probation officer's conclusion, and we agree with its determination that there were at least 2.2 kilograms of crack cocaine involved in the subject offenses.

6

Additionally, Francis questions the district court's consideration of prior drug convictions as felonies; however, the only evidence or argument given to support this position is Francis' bald and conclusory statement that his prior convictions "are indeed misdemeanors." This is insufficient to find clear error by the district court.

V.

Chase challenges his convictions under 18 U.S.C. § 924(c)(1) for using or carrying a firearm in relation to a drug trafficking offense and for aiding or abetting one or more persons who used or carried a firearm in relation to a drug trafficking offense. To support the conviction, the government must show that the defendant: (1) used or carried a firearm and (2) did so during and in relation to a drug trafficking offense or crime of violence. United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997) (citations omitted).

The recent Supreme Court decision in Bailey v. United States, 116 S. Ct. 501 (1995), clarified what constitutes "use" of a firearm during drug trafficking under § 924(c)(1), holding that liability "attaches to cases of actual use, not intended use, as when an offender places a firearm with the intent to use it later if necessary." Id. at 507. The Court stated:

> [t]he active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire a firearm. . . . Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious forceful presence of a gun on a table can be a "use."

Id. at 508. As to his conviction on the August 30, 1994 charge, Count 69, the evidence is clearly insufficient to convict Chase of using or carrying a firearm. The subject handgun was seized incident to a search warrant executed at Chase's residence. In light of Bailey, the government concedes that the placement of a gun on a nightstand in a room where drugs are present is not active employment in relation to a drug trafficking crime. Accordingly, we reverse Chase's conviction for using and carrying a gun on August 30, 1994.

7

As to his conviction on the January 8, 1993 charge, Count 5, the government asserts that there is sufficient evidence to support a conviction under both the "carry" prong of § 924(c)(1) and "use" as defined in Bailey. However, irrespective of the evidence before the jury, the court must determine whether the instructions received by the jury ensured a constitutional verdict. United States v. Smith, 94 F.3d 122, 124 (4th Cir. 1996). The jury was instructed that it could convict Chase under § 924(c)(1) if he had used or carried the firearm at issue during a drug trafficking offense as follows:

> [I]f a firearm plays any role in the drug felony, if it facilitates the crime in any way, it is being used in the crime in the sense that it has been charged under this indictment. Moreover, if the firearm's role is only a passive one, such as being possessed for security or for contingencies, that would constitute use or possessing during a drug trafficking offense, and again, the phrase "use" or "carries a firearm" means having a firearm or firearms available to assist or aid in determining whether the Defendant used or carried a firearm, you may consider all of the factors received into evidence, including the nature of the underlying drug trafficking crime, as alleged, the proximity of the defendant to the firearm in question, and the usefulness of a firearm to the crime alleged, and the circumstances surrounding the presence of the firearm. The Government is not required to show that the defendant actually displayed or fired the weapon. The Government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession, or under the defendant's control, at the time of the drug trafficking offense.

Although consistent with prior precedent in this circuit, this instruction is clearly inconsistent with Bailey which requires that a firearm be actively employed to constitute "use" under § 924(c)(1). See Bailey, 116 S. Ct. at 506. If the jury was improperly instructed as to an essential element of an offense, the subsequent conviction must be set aside, unless the court finds beyond a reasonable doubt, "that the jury actually made the finding that inheres in the element." Smith, 94 F.3d at 124 (citations omitted). Because the jury was instructed as to both "using" and "carrying" a firearm, we cannot know under which

8

prong of § 924(c)(1) Chase was convicted. Thus, his conviction as to January 8, 1993, must be vacated. Chase may be retried at the government's option. Smith, 94 F.3d at 125; United States v. Hawthorne, 94 F.3d 118, 121 (4th Cir. 1996).**3**

In light of our reversing one of Chase's convictions under § 924(c)(1) and vacating the other, we must also vacate his sentence. Should the government elect not to retry Chase on the January 8, 1993 charge, it may proceed directly to resentencing and seek the "possession" enhancement provided by United States Sentencing Commission, Guidelines Manual § 2D1.1(b)(1). Smith, 94 F.3d at 125; Hawthorne, 94 F.3d at 122.

VI.

A.

All appellants contest the amount of drugs attributed to them at their respective sentencings. Factual findings by the district court are governed by a preponderance of the evidence standard. United States v. Vinson, 886 F.2d 740, 741-42 (4th Cir. 1989), cert. denied, 493 U.S. 1092 (1990). As stated above, the district court considered extensive evidence concerning the factual support of the probation officer's conclusion, and we agree with its determination that there were at least 2.2 kilograms of crack cocaine involved in the subject offenses. The district court held one hearing involving Francis and Chase and another hearing involving Dodson in order to individualize the amount of drugs attributable to each defendant. A review of the transcripts of those hearings reveals that there was more than sufficient

_____

**3** Where the defendant does not object to the instruction at trial, we review for plain error under Fed. R. Crim. P. 52(b). For there to be plain error, it must be shown that the error affects the "substantial rights" of the defendant. United States v. Olano, 507 U.S. 725, 734 (1993). Whether an error misinstructing the jury as to an essential element of an offense affected "substantial rights" is subject to harmless error review. United States v. Johnson, 117 S. Ct. 1544, 1549-50 (1997). In the present case, we find that the facts do not lend themselves to clearly support the conviction of Chase as to the January 8th offense. Thus, we cannot conclude that the misinstruction did not affect Chase's substantial rights.

9

evidence, and certainly a preponderance of the evidence, to support the finding of the district court that there were at least 2.2 kilograms of cocaine involved in offenses for which appellants were convicted.

B.

Dodson specifically contends that the district court improperly considered an offense occurring on March 16, 1994, in determining that the "relevant conduct" drug weight involved in the subject offenses was 2.2 kilograms of cocaine base. A review of the record shows that the district court carefully considered the evidence at Dodson's sentencing in determining the "relevant conduct" drug weight. Although Dodson was not charged with the March 16 offense in the present case, the district court was within its discretion to include the weight of the drugs seized from Dodson at that date in its estimate. See United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994), cert. denied, 115 S. Ct. (1995).

VII.

Dodson also contends that the district court improperly denied his motion for new trial based on newly discovered evidence. We review the district court's decision not to grant a new trial for an abuse of discretion. United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995). The newly discovered evidence upon which Dodson relies consists of a recantation by one witness, Shirley Law, and affidavits, trial testimony, and correspondence from co-defendants which allegedly refute the government's case against him.

A.

A new trial based on a recantation by a witness should be granted when:

> (a) The court is reasonably well satisfied that the testimony given by a material witness is false.

> (b) That without it the jury might have reached a different conclusion (emphasis in original).

10

(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976) (citations omitted). Law's recantation does not meet the above test because she merely avers that detectives threatened her if she failed to testify against Dodson, not that any of her testimony was false.

B.

In order to be granted a new trial based on newly discovered evidence under Fed. R. Crim. P. 33, the following five elements must be established: (1) the evidence is newly discovered since the trial; (2) the facts must be alleged from which the court may infer that the movant exercised due diligence; (3) the evidence being relied upon is not merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that it would probably produce an acquittal at a new trial. Singh, 54 F.3d at 1190 (citations omitted).

None of the additional affidavits submitted by Dodson provide any exculpatory evidence. This evidence is not material because it merely refutes the government's witnesses and fails to directly contradict the government's case. Furthermore, we agree with the district court that none of the evidence introduced in these affidavits would be likely to produce an acquittal at a new trial. Therefore, we find that the district court properly considered and rejected the new evidence as grounds for a new trial.

VIII.

Finally, all appellants contend that their convictions for conspiracy to distribute powder cocaine and cocaine base and their convictions for CCE should be reversed because a special verdict form was not submitted to the jury distinguishing between the different forms of cocaine.[4] There does not appear to be any ambiguity in the jury's

_____

[4] Dodson's conviction on the conspiracy count was dismissed by the district court on January 18, 1995, because it was duplicitous of his CCE conviction.

11

finding as to what the basis of their verdict was because the indict-
ment was for violating drug laws by the distribution of both cocaine
hydrochloride and cocaine base. As discussed above, the evidence at
trial established that this group of conspirators sold powder cocaine,
sold crack cocaine, and converted powder to crack to be sold in that
form. While special verdict forms may be used in conspiracy cases
with multiple objectives, United States v. Davila, 964 F.2d 778, 783
(8th Cir.), cert. denied, 113 S. Ct. 438 (1992), it is not the law of this
circuit that a special verdict form is required in a conspiracy or CCE
case with more than one specific objective.

IX.

For the foregoing reasons, we reverse Chase's conviction as to the
August 30, 1994 charge under 18 U.S.C. § 924(c)(1) for having used
or carried a firearm in relation to a drug trafficking crime. His convic-
tion as to the January 8, 1993 charge under the same statute is
vacated, as is his sentence. Accordingly, Chase's case must be
remanded to the district court for further proceedings consistent with
this opinion. We affirm all other convictions.

AFFIRMED IN PART, REVERSED IN PART,
VACATED IN PART, AND REMANDED

12